```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANGEL MALDONADO,

                  Petitioner,          MEMORANDUM AND ORDER
                                       06-CV-5166 (JS)
      -against-

NEW YORK STATE,

                  Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:      Thomas J. Eoannou, Esq.[1]
                     484 Delaware Avenue
                     Buffalo, NY 14202

For Respondent:      Rosalind C. Gray, Esq.
                     Suffolk County District Attorney's Office
                     Criminal Courts Building
                     200 Center Drive
                     Riverhead, NY 11901
```

SEYBERT, District Judge:

Petitioner Angel Maldonado filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, that Petition is DENIED.

## DISCUSSION

Petitioner was charged in a state court indictment with defrauding several women out of a total of $71,000. On May 10, 2000, Petitioner appeared before the New York Superior Court, County of Suffolk, to plead guilty.

---

[1] Mr. Eoannou appeared in this litigation on February 24, 2010, after briefing was complete. Petitioner largely litigated this action pro se.

Before accepting his plea, the Court placed the terms of Petitioner's plea bargain on the record. Among other things, the Court promised that, if Petitioner fulfilled his restitution obligations by September 28, 2000, the Court would sentence him to "one to three years." But, the Court warned, if he failed to meet this condition, the Court would be "free to sentence you to the maximum allowed by law which would be up to two and a third to seven years in state prison." Petitioner acknowledged these terms, then pled guilty. In so doing, Petitioner affirmatively acknowledged that his plea was voluntary and intelligent, and that he was actually guilty of the indictment's 17 counts.

After accepting Petitioner's plea, the State Court agreed to release Petitioner on bail, pending sentencing. The Court imposed three conditions on Petitioner's release: (i) that Petitioner cooperate with the probation department; (ii) that Petitioner not be arrested or charged with any crime while out on bail; and (iii) that Petitioner physically appear in Court on the sentencing date. The Court warned that, if Petitioner failed to comply with any of those three conditions, it would be "free to sentence you with respect to these matters to the maximum allowed by law," and noted that it would be "freed from [its] sentencing promise of an indeterminate sentencing of a minimum of one year, maximum of three years." Petitioner then

2

acknowledged that he understood these conditions, and the Court's warning.

Petitioner neither fulfilled his restitution obligations, nor appeared for sentencing. Instead, he absconded the jurisdiction, first to Puerto Rico, and then to Florida. There, he was captured and brought back to Suffolk County.

On February 12, 2003, Petitioner attempted to withdraw his guilty plea. On March 21, 2003, the Court denied Petitioner's motion.

On April 23, 2003, Petitioner finally appeared for sentencing. Before being sentenced, Petitioner acknowledged that it was "wrong" for him to "accept[]" the "gifts" his victims gave him, but pronounced himself "offen[ded]" by the charges against them. Petitioner further speculated that he didn't understand why one of his victims "would think I was taking advantage of her," denied the indictment's allegations that he impersonated a police officer, adamantly insisted that he "never conned anybody," and declared that any obligation to repay his victims rested solely on his status as "a Christian." Then, Petitioner went on to complain that, although he "didn't ruin anybody's life," the charges against him forced him "to move out of New York" (i.e., flee the jurisdiction to Puerto

3

Rico and Florida)[2], led to his wife's miscarriage, and "smashed" his reputation.

The Court sentenced Petitioner on each of the seventeen counts, plus an additional count for bail jumping. None of the Court's sentences individually exceeded seven years, the maximum the Court threatened to impose if he failed to fulfill his restitution obligations. But the Court ordered several of Petitioner's sentences to run consecutively, rather than concurrently. Consequently, the Court's sentences added up to an indeterminate term of between five and fifteen years. Neither Petitioner, nor his counsel, objected at the time to the Court's sentences, including the Court's decision to sentence Petitioner to an indefinite term that could exceed seven years.

In May 2004, Petitioner sought to vacate his conviction through a N.Y. C.P.L. § 440.10 action. In this action, Petitioner alleged, among other things, that the trial court erred when it enhanced his sentence without giving him an opportunity to withdraw his plea. In August 2004, the New York

---

[2] The "classic definition" of chutzpah has been described as "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." Motorola Credit Corp. v. Uzan, 561 F.3d 123, 129 n. 5 (2d Cir. 2009) (quoting "The Joys of Yiddish"). Petitioner's statement could, perhaps, rewrite that definition. No longer needing an apocryphal orphan, the definition could instead cite Petitioner's belief that, having jumped bail and evaded the United States Marshals across three jurisdictions, he's entitled to mercy because, by fleeing, he "move[d] out of New York."

4

County Court, Suffolk County, denied Petitioner's request for relief. The Court concluded that Petitioner's claims were procedurally barred because they were "all based upon matters that appear on the record and as such should have been addressed on direct appeal," noting that "[t]he purpose of C.P.L. § 440.10 is to inform a court of facts not reflected in the record and unknown at the time of the judgment." In addition, the Court found that Petitioner's "claim that his plea of guilty was invalid because his sentence was enhanced was wholly without merit," finding under state law that "the court is not bound to [a violated plea agreement] and may impose an enhanced sentence." Petitioner promptly appealed to the Second Department.

In addition, in October 2004, Petitioner perfected his direct appeal. On direct appeal, Petitioner argued, among other things, that the trial court committed revisable error in sentencing Petitioner to a harsher sentence than the one bargained for, without giving Petitioner an opportunity to withdraw his plea. When he drafted this appeal, Petitioner's attorney knew about Petitioner's § 440.10 action. But Petitioner's attorney did not argue that this § 440.10 action removed any waiver or procedural bar to Petitioner's claims.

The Second Department denied both Petitioner's direct and § 440.10 appeals. In both decisions, the Second Department

5

concluded that Petitioner's arguments concerning his enhanced sentence and his inability to withdraw his guilty plea were procedurally barred.[3] Petitioner then filed a writ of error corum nobis. Again, the Second Department denied Petitioner relief.[4]

Petitioner then commenced this action. Petitioner raises two cognizable claims: (1) the trial court committed reversible error in issuing an enhanced sentence without first permitting him an opportunity to withdraw his plea; and (2) appellate counsel was constitutionally ineffective when he failed to argue that Petitioner's § 440.10 action preserved his sentencing and plea arguments for appeal.

DISCUSSION

I.  Federal Habeas Review of State Convictions

Petitioner filed this action after the April 24, 1996, effective date of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. Williams v. Taylor, 529 U.S. 362, 402, 120 S. Ct.

---

[3] See People v. Maldonado, 34 A.D.3d 497, 498, 823 N.Y.S.2d 529, 530 (2d Dep't 2006) (Petitioner failed to preserve his argument that the trial court improperly imposed an enhanced sentence without permitting him an opportunity to withdraw his guilty plea; Petitioner should have raised this issue on his direct appeal, not through a § 440.10 motion); People v. Maldonado, 21 A.D.3d 430, 799 N.Y.S.2d 423, (2d Dep't 2005) (denying Petitioner's claims as "unpreserved for appellate review").

[4] People v. Maldonado, 28 A.D.3d 791, 812 N.Y.S.2d 886 (2d Dep't 2006).

1479, 1518, 146 L. Ed. 2d 389 (2000). Under 28 U.S.C. § 2254(d), a habeas corpus application must be denied unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This deferential review is applied as long as the "federal claim has been 'adjudicated on the merits' by the state court." Cotto v. Herbert, 331 F.3d 217, 231 (2d Cir. 2003). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal citations and quotations omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

7

nevertheless arrives at a result different from [their] precedent." Penry v. Johnson, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Penry, 532 U.S. at 792. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

II. Petitioner's Sentencing and Plea Claims

As noted above, the Second Department has twice concluded that Petitioner's sentencing and plea-related claims were procedurally barred. When a state court rejects a § 2254 petitioner's "claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine . . . applies." Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Several such exceptions exist. But none apply here. For instance, Petitioner does not allege, much less evidence, that he is actually innocent of the charged crimes. See House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). And the trial court's error certainly does not

8

constitute a fundamental miscarriage of justice. See O'Sullivan v. Boerckel, 526 U.S. 838, 841, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). On the contrary, clear precedent establishes that the trial court's actions do not warrant habeas relief. See Mask v. McGinnis, 252 F.3d 85, 87 (2d Cir. 2001). Likewise, Petitioner cannot show "cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Indeed, far from being a violation of federal law, Petitioner's attack on the trial court's rulings is "patently frivolous." Johnson v. Berbary, 09-CV-0160, 2011 WL 282351, at *4 (W.D.N.Y. Jan. 26, 2011).

III. Petitioner's Ineffective Assistance of Appellate Counsel Claim

On the merits, the Second Department denied Petitioner's writ of error corum nobis, which alleged the same ineffective assistance of appellate counsel argument that Petitioner raises here.[5] Thus, this claim is not barred, but instead is subject to the usual § 2254(d) deference afforded state court decisions.

In Harrington, the Supreme Court recently clarified the standard for assessing ineffective assistance of counsel claims when § 2254(d)'s deference applies. The Supreme Court

---

[5] Maldonado, 28 A.D.3d at 791.

9

noted that, under § 2254(d), "the question is not whether counsel's actions were reasonable" under the familiar Strickland standard for judging ineffective assistance of counsel. Id., 131 S. Ct. at 788. Instead, the "question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. (also noting that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so") (internal quotations omitted).

Here, a reasonable argument can be made that appellate counsel "satisfied Strickland's deferential standard." Id. It is well-settled that the Sixth Amendment does not require "appellate counsel [to] brief and argue every non-frivolous claim that his client suggests; to the contrary, an important part of appellate counsel's role is to select the arguments most worth making on appeal and to abandon weak claims." Mohsin v. Ebert, 626 F. Supp. 2d 280, 316 (E.D.N.Y. 2009). Here, after reviewing Petitioner's appellate brief, and the Affirmation that Petitioner's appellate counsel supplied, the Court is satisfied that appellate counsel properly and reasonably engaged in this strategic decision-making process. In any event, Petitioner fails to show prejudice. Under New York state law, it is well-settled that, when a defendant breaches a plea agreement, trial courts are free to impose an enhanced sentence without

10

permitting the defendant an opportunity to withdraw the plea. See, e.g., People v. Bove, 64 A.D.3d 812, 812, 882 N.Y.S.2d 352, 353 (3d Dep't 2009); People v. Tancredi, 52 A.D.3d 326, 327, 860 N.Y.S.2d 59, 60 (1st Dep't 2008); People v. Guillen, 37 A.D.3d 493, 493, 829 N.Y.S.2d 197, 198 (2d Dep't 2007).

IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c), a district court may issue a Certificate of Appealability "only upon the substantial showing of the denial of a constitutional right. The petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Middleton v. Attorneys General, 396 F.3d 207, 209 (2d Cir. 2005) (citations and quotations omitted). Because there can be no debate among reasonable jurists that Petitioner's claims do not entitle him to § 2254 habeas relief, the Court will not issue a Certificate of Appealability.

CONCLUSION

Mr. Maldonado's Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED. The Court will not issue a Certificate of Appealability. The Clerk of the Court is directed to mark this matter as closed.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: February \_\_14\_\_, 2011
       Central Islip, New York